IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

JAMES DILLARD,

   Plaintiff,

v.

MAHBOOB ASHRAF, M.D.,
BRENDA REESE, R.N.,
DENNIS MARTIN, R.N.,
PEGGY MAHLER, N.P.,

   Defendants.

Civil Action No.: RDB-18-0094

**MEMORANDUM OPINION**

Upon review of the materials submitted by the parties at the direction of the Court, and for the reasons set forth below, the Court finds that Defendants are entitled to summary judgment in their favor. No hearing is required. *See* Local Rule 105.6 (D. Md. 2018).

**Background**

On August 10, 2018, this Court denied without prejudice Defendants' Motion to Dismiss or for Summary Judgment in this civil rights case. ECF 16 & 17. This Court reasoned that:

> Dillard alleges that Defendants failed to provide him his diabetes medication, Metformin, for 33 days, resulting in high blood sugar, severe headaches, and periods of temporary blindness. Defendants respond by noting that Dillard had active orders for Metformin at all relevant times. Additionally, Defendants claim that Dillard did not, in person, make any complaints to medical staff about the issue, and, therefore, if he was not receiving the medication, they were unaware of this fact. However, Dillard's evidence shows that he submitted multiple sick call complaint forms during the relevant time period to medical staff, writing of his inability to obtain the medication. Furthermore, Defendants do not address if, when, how, or by whom Dillard was actually administered the diabetes medication, nor do they provide any documentation of such, beyond simply noting that the medication was on his "active" list of medications.
>
> In addition, Dillard alleges that Defendants discontinued his pain medications, Primidone, Neurontin, and Tramadol, when he was charged with hoarding

> medications, and that Defendants refused to reinstate the medications after he was cleared of the charges, resulting in withdrawal and constant debilitating pain for him. Defendants claim that they were not aware of Dillard's being cleared of the hoarding charges against him, and argue that the pain medications evidently were not medically necessary if Dillard had been hoarding them rather than ingesting them. However, Dillard's evidence shows that he alerted medical staff that he had contested the hoarding charges and prevailed at the hearing. Defendants do not address what, if any, actions were taken to investigate the status of those charges. Furthermore, Defendants do not address Dillard's claim that the reason he was charged with, and later cleared of, hoarding medications is that he was provided with a "blister pack" of 30 Primidone pills.
>
> As Defendants have failed to provide certain relevant evidence, as detailed above, Defendants' Motion to Dismiss or, Alternatively, for Summary Judgment is DENIED without prejudice, subject to renewal upon submission of the necessary information.

ECF 16 at 12-13.

Thereafter, Defendants filed a Supplemental Motion to Dismiss or for Summary Judgment. ECF 19. This Court again denied the motion without prejudice and noted the following deficiencies in the supplemental pleading:

> Defendants have not addressed what, if any, actions were taken to investigate the status of the charges [against Dillard], which included violations of Rule 111 (possession or use of an authorized medicine, drug or substance identified as an intoxicant, excluding alcohol and a controlled dangerous substance), Rule 112 (possession or use of a drug or controlled dangerous substance) and Rule 114 (possession of a controlled dangerous substance, intoxicant or alcohol in sufficient quantity or packaging material that suggests an intent to distribute or distribution).
>
> Furthermore, Defendants do not address Dillard's claim that the reason he was charged with, and later cleared of, hoarding medications is that he was provided with a "blister pack" of 30 Primidone pills. Although medical records suggest a conversation with Division of Correction staff led to a conclusion that Neurontin and Tramadol were among the medications seized during the cell search leading to the hoarding charges, the parties have not produced the actual reports detailing what was seized. While the Court readily accepts Defendants' assertion that opioid-type medications such as Neurontin and Tramadol are administered during pill call on a "watch-take" basis, it is quite plausible that medications such as Primidone and perhaps Metformin, a diabetes medication which is taken with meals, may be made available to prisoners to self-administer in their cells. Nor have Defendants responded as to why basic health care products such as

2

>foot powder, eye drops and medicated skin creams were seized and never returned. The answers to these questions may be necessary to the outcome of this case.

ECF 26 at 1-2, n.1. Each of the issues noted by the Court are addressed below.

## Standard of Review

### A.    Summary Judgment

Summary Judgment is governed by Fed. R. Civ. P. 56(a) which provides that:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

*Anderson v. Liberty Lobby, Inc*., 477 U. S. 242, 247-48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc*., 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The Court should "view the evidence in the light most favorable to . . . the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002). The Court must, however, also abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted)

(quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).

**B.      Eighth Amendment Claim**

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173 (1976); *see also Hope v. Pelzer*, 536 U.S. 730, 737 (2002); *Scinto v. Stansberry*, 841 F.3d 219, 225 (4th Cir. 2016); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016). "Scrutiny under the Eighth Amendment is not limited to those punishments authorized by statute and imposed by a criminal judgment." *De'Lonta v. Angelone*, 330 F.3d 630, 633 (4th Cir. 2003) (citing *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)); *accord Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017). To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need. *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson*, 877 F.3d at 543.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-7 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The

4

subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto v. Stansberry*, 841 F.3d 219, 226 (4th Cir. 2016) (quoting *Farmer*, 511 U.S. at 842).

**Analysis**

**A.     Discontinuation of Pain Medications**

In response to the concerns expressed by this Court, Defendants cite to medication records that refute Dillard's assertion that he was provided with "blister packs" of Primidone. ECF 27 at 2-3, citing ECF 19-1 at 35 (Sept. 2017 Medication Administration Records). They explain that the records establish that Dillard was provided with Primidone on a daily basis by a nurse, not periodically with blister packs of 30 pills as he suggests, which would have been indicated with the notation "KOP", keep on person. ECF 27-1 at 2-3, ¶¶3, 4. The implication is that Dillard's explanation concerning the Primidone pills found in his cell was false because he was not permitted to possess the multiple doses found in his cell.

Defendants further explain that they were informed that Dillard had been caught hoarding Primidone, Ultram, and Neurontin and reasonably believed that Dillard no longer needed the medication since he was foregoing its administration voluntarily. ECF 27 at 2. Defendants explain that as medical care providers they are not privy to information regarding disciplinary proceedings, nor were they informed that the initial report they received was incorrect. *See* ECF 9-2 at 7 (Administrative Note indicating pills found included Ultram and Neurontin).

They also dispute Dillard's assertion that the disciplinary charges were dismissed because the medication was provided in a blister pack; rather, the disciplinary records simply indicate that the charges were dropped because the "rules charged were not supported." ECF 14-4 at 2

5

("Institution requests dismissal due to the fact that the rules charged were not supported."). There is no indication that testimony was taken at the hearing, or that any information regarding the manner in which Dillard's medication was dispensed was considered. *Id*. The adjustment hearing records provide no basis for supporting Dillard's conclusion that he was exonerated of any wrong doing regarding his medications. Meanwhile, the medical staff had a credible report from security officers that Dillard was found with 21 pills in his cell, all of which were supposed to be administered daily. ECF 9-2 at 7.

Finally, Defendants also note that as medical care providers, they have no control or decision making authority regarding confiscation of health care products such as foot powder, eye drops, and medicated skin creams. ECF 27-1 at ¶6. To the extent Dillard had these items removed from his cell and has a legitimate complaint concerning their removal, Defendants cannot require their return.

In response, Dillard characterizes Defendants' position regarding the disciplinary proceedings as meaning that they would have reinstated his prescriptions had he produced the hearing officer's record, but that they also dismiss the report claiming it is ambiguous. ECF 28 at 2. Dillard then suggests that this Court should issue an order requiring the prison case management staff to produce the adjustment report for this Court's review. *Id*. Dillard insists that he had "the actual sticker showing that the [P]rimidone was prescribed" to him and the only way he could have had that is for medical staff to "give him the blister pack with the sticker on it." *Id*. Dillard argues in the alternative that "even if the defendants were correct in stopping [his] medications, they had a duty to treat [his] pain." ECF 28 at 3. He also asserts that Defendants stopped his medication without tapering it, causing him to experience withdrawal symptoms. *Id*.

As this Court has already noted, deliberate indifference to a serious medical need requires some proof of subjective intent by the defendant to engage in a disregard for an excessive risk; constitutional rights are not violated by acts of negligence. *See Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014) (actual knowledge of serious medical need and excessive risk of harm required to support an Eighth Amendment claim). "[A]n inadvertent failure to provide adequate medical care" does not amount to deliberate indifference." *Estelle*, 429 U.S. at 105-06; *accord Andersony*, 877 F.3d at 543 ("It is obduracy and wantonness, not inadvertence or error in good faith, that characterize the conduct prohibited by the Cruel and Unusual Punishments Clause.").

Defendants have made it clear that the information upon which they premised the decision to discontinue some of Dillard's pain medication[1] was a credible, reliable report from correctional staff. The adjustment hearing report does not support Dillard's claim that the charges were dismissed because he submitted proof that he had been issued a blister pack of Primidone and that it was the only medication found in his cell. Rather, there was nothing stated about the evidence relied upon by the institutional representative for the decision to seek dismissal of the charges prior to a hearing. Further, if Defendants were under the impression that Dillard had declined to take pain medication that was dispensed to him, there was no reason for them to be concerned about withdrawal symptoms when the prescriptions were terminated. The information available to Defendants at the time was that Dillard's own actions began the process of withdrawal from these medications. To the extent Defendants mistakenly believed Dillard was not at risk for withdrawal symptoms, that mistaken belief is not enough to support an Eighth Amendment claim.

Absent from Dillard's assertions is any sort of acknowledgement that treatment of chronic pain, a condition that hinges in part on the subjective perception of the patient, is problematic in a

---

[1] Dillard was provided other, non-prescription pain medication. *See* ECF 27-1, ¶9.

prison setting.  Defendants are tasked with treating patients appropriately, but also with exercising diligence in order to prevent the misuse or abuse of  medications prescribed.  The circumstances presented by this case do not indicate that these Defendants were engaging in conduct calculated to cause Dillard harm.  Viewing the evidence in the light most favorable to Dillard, *see Dennis,* 290 F.3d at644-45, there was a misunderstanding regarding the medications Dillard had in his cell that led to a discontinuation of some of his pain medications.  This evidence does not present a " specific facts showing that there is a genuine issue for trial."  *Bouchat.*, 346 F.3d at  525.  Accordingly, Defendants are entitled to summary judgment in their favor on this claim.

**B.**     **Diabetes Medication**

Defendants assert that Dillard's claim that his insulin was stopped on August 11, 2018, is belied by the medical record of the same date indicating that changes were made to his diabetes medication in order to better control his diabetes.  ECF 27-2 at 2 (noting that Dillard's diabetes was poorly controlled but that it was better managed when he takes Metformin).  A treatment plan was developed and included a directive to continue Metformin so that A1c analysis could be performed.  *Id*.  Dillard's claim therefore fails as a matter of law.  The right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*."  *United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) (emphasis added) (quoting *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir. 1977)).  "Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless exceptional circumstances are alleged."  *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)

With regard to Dillard's claim that fingerstick blood glucose monitoring had been terminated as of September 29, 2018, Defendants state there is no evidence to support such a claim in Dillard's medical records. On November 3, 2018, an Office Visit Note indicates that his diabetes is "managed with diet, oral medications, insulin, and fingerstick blood sugars." ECF 27-2 at 17. Prior to that visit Dillard's A1c level was measured at 5.8, which is in the normal range and eliminates the need for fingerstick blood glucose. *Id*. Random fingerstick glucose monitoring nevertheless remains available to Dillard in the medical department.[2] ECF 27-1 at ¶7.

Dillard's claim that on October 10, 2018, Defendants allowed his chronic care medications to lapse for 25 days causing him to experience symptoms associated with high blood sugar such as severe headaches and periods of temporary blindness, is also refuted by the medical records submitted by Defendants. Dillard was seen on September 26, October 15, and November 3, 2018, and had active orders for medications including Metformin. The notes for the November visit document orders for his medications from June 10, 2018 through March 3, 2019. ECF 27-2 at 19-20. Further, there is documentation that Dillard received his medication. ECF 27-3.

Dillard claims that Defendant Peggy Mahler was told on October 26, 2017, that his chronic care medications were confiscated by correctional officers on September 29, 2017, when his cell was searched and that he had been without his medication for 24 days, but she did not do anything about reinstating his medication. ECF 28 at 4. The October 26, 2017 record indicates that Dillard said "custody took his CC meds on 9/29/17 while shaking his cell down & now he has not had any meds for 24 days for his L[ower] B[ack] P[ain] that radiates down legs to his feet . . . ." ECF 9-2

---

[2] Dillard argues that his name has not been placed on the pass list to go to medical for fingerstick blood tests. ECF 28-2 at 10-15. Whether Dillard is issued a pass to go to medical does not appear to be a matter that is within the control of these Defendants who are medical providers. Further, Dillard's administrative remedy procedure complaint, filed as an exhibit, contains no response to indicate who was responsible for issuing the pass. ECF 28-2 at 9. The claim is premature and unexhausted and also may be leveled against the wrong parties.

9

at 12. There is no indication in the record that Dillard went without medication for his diabetes for 24 days or, relatedly, that he experienced symptoms of severe headaches and temporary blindness. *See* ECF 9-2 at 9, 10, 13, 15, 17, 21 (active medications list includes Metformin). Dillard's argument that his signature does not appear on any of the medication administration records, seemingly implying that the records are false, is an insufficient basis to conclude that he did not receive the medications and that Defendants were aware he did not receive them. ECF 28 at 5.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013). Dillard, as the non-moving party, has not forecast sufficient evidence in his favor that would permit a fact finder to return a verdict in his favor on his constitutional claim concerning his diabetes medication. *Anderson*, 477 U.S. at 250 (1986). Here there is no evidence to support a claim that Defendants were subjectively reckless in treating or failing to treat Dillard's diabetes. *See Farmer*, 511 U.S. at 839-40.

As demonstrated by the verified medical records submitted, Dillard was seen and monitored for his diabetes on a regular basis. To support an Eighth Amendment claim, the Defendants "must have both 'subjectively recognized a substantial risk of harm' and 'subjectively recognized that his[/her] actions were inappropriate in light of that risk.'" *Anderson*, 877 F.3d at 545 (quoting *Parrish ex rel. Lee v. Cleveland*, 372 F.3d 294, 303 (4th Cir. 2004)). The evidence before the Court does not support a finding that any of these Defendants recognized a substantial risk of harm to Dillard or that their actions in monitoring his diabetes were inappropriate.

**Conclusion**

The record before the Court does not demonstrate a genuine issue for trial.  This Court has an "'affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial.'"  *Bouchat*, 346 F.3d at 526 (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778–79 (4th Cir. 1993), and citing *Celotex*, 477 U.S. at 323–24).  Accordingly, by separate Order which follows, Defendants shall be granted summary judgment in their favor.

__6/1/2020_____  
Date

_____/s/_____  
RICHARD D. BENNETT  
UNITED STATES DISTRICT JUDGE